**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

TRAVELERS INDEMNITY COMPANY,
Plaintiff.

v.

VIRGINIA TRANSPORTATION CORPORATION, LEO H. DOIRE, JR. and WAYNE DEMARCO,
Defendants.

**Civil Action No.: 06-488S**

***DEFENDANTS' MOTION FOR A DISMISSAL OR IN THE ALTERNATIVE A STAY***

Now come the Defendants, in the within matter, and move this Court for a dismissal or, alternatively, a stay of the Plaintiff's Complaint to allow the pending State Court litigation to proceed and take precedence in determining the rights of the parties. Defendants request oral argument not to exceed (30) thirty minutes pursuant to LR Cv 7(e). Defendants rely on the attached Memorandum of Law in support of their position.

Defendants,
By Their Attorneys:

***D'AMICO • BURCHFIELD, LLP***

/s/ Robert A. D'Amico, II, Esq.
/s/ Mark W. Dana, Esq.
Robert A. D'Amico, II, Esq. #4593
Mark W. Dana, Esq.#4150
536 Atwells Avenue
Providence, Rhode Island 02909
(401) 454-1212
(401) 454-1233 – fax

***CERTIFICATION***

I hereby certify that on this 14th day of December, 2006, a true copy of the within document was filed electronically, and is available for viewing and downloading from the ECF system, and copies were sent to all counsel of records via regular mail.

Stephen P. Harten, Esq.
Ratcliffe Burke Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

Anthony R. Zelle
ZELLE McDONOUGH, LLP
Four Longfellow Place, 35th Floor
Boston, MA 02114

/s/ Mark W. Dana, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| TRAVELERS INDEMNITY COMPANY,<br>Plaintiff | ) | |
| v. | ) | **Civil Action No.: 06-488S** |
| VIRGINIA TRANSPORTATION CORPORATION, LEO H. DOIRE, JR. and WAYNE DEMARCO,<br>Defendants | ) | |

***MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY THE PROCEEDINGS***

## *I. Facts and Travel*

This case arises from a one vehicle automobile accident that occurred on September 10, 2003. At the time of the accident, the vehicle was operated by Leo H. Doire ("Doire") and owned by Virginia Transportation Corporation (collectively "Virginia"). The accident involved a high speed impact with two telephone poles and resulted in severe personal injury to Wayne DeMarco ("DeMarco") a front seat passenger who was pinned in the wreckage with life threatening injuries. Several other people were passengers in a vehicle including an individual from New Hampshire, Paul Woscyna ("Woscyna"). At the time of the accident Plaintiff, Travelers Indemnity Company ("Travelers") insured the vehicle under a policy of liability insurance coverage with policy limit in the amount of One Million Dollars ("policy limit").

Given the severity of DeMarco's injuries, his counsel notified Travelers in writing on November 3, 2003 that the DeMarco claim would likely exceed the policy limit. Early in 2004 DeMarco's counsel anticipated difficulty in resolving the DeMarco claim with Travelers and filed a lawsuit against Virginia in Providence County Superior Court entitled, *Wayne DeMarco et al v Leo Doire and Virginia Transportation Company,* Providence County Superior Court, C.A. No. 04-1171. Woscyna did not file suit until August of 2006 in Kent County Superior Court and National Grid did not file suit until September 2006 in Sixth Division District Court. On or about February 2, 2004, DeMarco's counsel forwarded a courtesy copy of his lawsuit to Travelers and demanded the policy limit in settlement of DeMarco claim. After DeMarco's lawsuit ("DeMarco Litigation") was filed and served upon Virginia, Travelers appointed Michael R. DeLuca, Esq. and the law firm, Gidley, Sarli & Marusak, LLP ("appointed counsel") to defend Virginia in the DeMarco Litigation as required under the terms and conditions of the Policy.

While the litigation was pending, DeMarco's counsel made various and repeated demands for settlement within Virginia's policy limit. Specifically, settlement demands were presented to Travelers in writing on February 25, 2004, July 22, 2005 and finally, on August 23, 2006. (collectively Exhibit A). Notwithstanding these written demands for settlement within the policy limit, the only response ever received from Travelers was in correspondence dated February 27, 2004 from the Travelers adjuster, Caren Gattinella, asserting that Travelers could make no offer to settle the DeMarco claim because there were other claimants involved in the loss including Woscyna, who had also made a demand for settlement within Virginia's policy limit.

As time passed, Travelers remained steadfast in its refusal to extend an offer of

settlement to DeMarco or Woscyna. Because Travelers refused to make a settlement offer, DeMarco moved to accelerate his case on the trial calendar in Superior Court on the grounds that the amount in controversy clearly exceeded $100,000. The motion was granted in October, 2005 and thereafter the court assigned a trial date certain for September 18, 2006.

Approximately sixty days prior to the trial date, on or about July 11, 2006, Travelers, by appointed counsel, provided written notice that it was surrendering its policy limit to all interested claimants and that it was the claimants' responsibility to determine how to divide the money. Travelers' conditional surrender of the policy limit further required that ***all*** parties involved would have to agree to the settlement and a pro rata distribution of the policy limit and execute releases satisfactory to Travelers before any settlement money would be available to any one claimant. This correspondence was the first time in almost three years since the accident that Travelers even suggested that it would make its policy limits available. Through appointed counsel, Travelers further warned that it would file an interpleader action and seek to deposit the policy limit into the Superior Court Registry if the potential claimants could not reach an agreement amongst themselves on a pro rata distribution.

When the conditional surrender of its policy failed to settle all claims, appointed counsel, while still defense counsel of record for Virginia in the DeMarco Litigation, filed an interpleader action on behalf of Travelers, on August 15, 2006 in the matter entitled *The Travelers Indemnity Company v. Wayne DeMarco et al., Paul Woscyna, National Grid USA Service Company, Inc. as successor in interest to the Narragansett Electric Company and John Doe, I through X,* Providence County Superior Court, C.A. No.: 06-4266. (the "Interpleader") (Exhibit B). The prayer for relief in Travelers' interpleader requested the Rhode Island Superior Court to allow it to deposit the policy limit into the court registry and order that Travelers "be discharged from all

liability to any of the Defendants in excess of $1,000,000." This prayer for relief is effectively the same relief that Travelers now seeks from this Court. The Interpleader currently remains active in Providence County Superior Court.

In the Interpleader, appointed counsel to Virginia, represented Travelers, and advanced a position on behalf of the insurance company that was contrary to the best interests their client, Virginia, by requesting the Court to allow Travelers to deposit its policy limit into the court registry. Plaintiffs contend that appointed counsel's conduct in this regard presented a clear conflict of interest and demonstrated appointed counsel's and Travelers' greater concern for the insurance company's assets than in protecting its insured, Virginia.

DeMarco answered and objected to the Interpleader, arguing that appointed counsel had a conflict of interest in representing Travelers therein. DeMarco also argued that it was too late for Travelers to bring the Intepleader because of its potential exposure to DeMarco above and beyond the policy limit pursuant to the clear rule established by the Rhode Island Supreme Court in the *Asermely*[1] . Mr. Justice Stephen J. Fortunato, Jr. heard oral arguments on September 5, 2006 and rendered a bench decision denying Travelers' request to deposit the money in the court registry, and further concluded that Travelers had "a considerable interest in the outcome" of the

---

[1] In *Aserlemy v. Allstate Ins. Co.*, 728 A.2d, 461 at 464, the Rhode Island Supreme Court promulgated a new rule to guide the trial courts in deciding issues of whether an insurer is, under certain circumstances, obligated to pay a judgment above and beyond its policy limits. The court in *Asermely* specifically held:

> It is not sufficient that the insurance company act in good faith. An insurance company's fiduciary obligations include a duty to consider seriously a plaintiff's reasonable offer to settle within the policy limits. Accordingly, if it has been afforded reasonable notice and if a plaintiff has made a reasonable written offer to a defendant's insurer to settle within the policy limits, the insurer is obligated to seriously consider such an offer. If the insurer declines to settle the case within the policy limits, it does so at its peril in the event that a trial results in a judgment that exceeds the policy limits, including interest. If such a judgment is sustained on appeal or is unappealed, the insurer is liable for the amount that exceeds the policy limits, unless it can show that the insured was unwilling to accept the offer of settlement. The insurer's duty is a fiduciary obligation to act in the best interests of the insured. Even if the insurer believes in good faith that it has a legitimate defense against the third party, it must assume the risk of miscalculation if the ultimate judgment should exceed the policy limits. *Id.*

DeMarco Litigation in light of the September 18th trial date. Transcript of Bench Decision at 10, *Travelers Indem. Co.*, No. 06-4266 (Superior Ct. September 5, 2006). (Exhibit C - Transcript of bench decision). Appointed counsel thereafter continued to represent the interests of Virginia in the DeMarco Litigation.

With one day notice and two weeks before DeMarco's trial date, appointed counsel and Travelers scrambled to convene a mediation hearing on September 7, 2006. DeMarco participated in the mediation in good faith even though he and his attorneys were fully prepared and ready for trial. Counsel for Woscyna and National Grid were also present at this mediation. This was Travelers first and only attempt, some three years after the date of the accident, to make an effort to settle the various claims. Travelers at no time during the course of that mediation extended an offer of settlement to DeMarco and there was no settlement of the Woscyna claim.

The only settlement offer ever extended to DeMarco in this matter came on September 15, 2006, the Friday before trial. At that time, Travelers extended a conditional offer to DeMarco in the amount of $550,000, however, that settlement offer was specifically contingent on the other claimant, Woscyna, accepting $450,000 in settlement of his claim. DeMarco rejected the $550,000 settlement offer and proceeded to trial on the following Monday, September 18, 2006.

On the Monday morning of trial, an offer of settlement was extended to DeMarco in the amount of $700,000. In no uncertain terms, it was made clear at this time that Travelers and appointed counsel were requiring that Virginia contribute some of its own assets to resolve the claim. Prior to extending the settlement offer of $700,000, Virginia demanded that Travelers pay the policy limit to DeMarco to settle the claim and forgo the upcoming trial. Defendants contend that appointed counsel did not advance his clients' demand to pay DeMarco the policy limit and,

on the contrary, aligned himself with Travelers in taking the position that Travelers could not exhaust its policy in settlement of only the DeMarco claim. Virginia was well aware on the first day of trial that if the policy limit was exhausted in settlement of the DeMarco claim, consistent with Virginia's demand, then Virginia would be exposed to excess liability and have personal exposure on the Woscyna claim. Nevertheless, Travelers refused to approve an offer of the policy limit to settle the DeMarco case.

The trial continued before a Providence County jury during the week of September 18, 2006 through September 22, 2006. On several occasions during the trial and before a verdict was returned, Virginia specifically demanded that Travelers pay DeMarco the policy limit to settle the claim. Travelers steadfastly refused to make the settlement offer consistent with the legitimate demand of their insured.

At trial, appointed counsel for Virginia stipulated to liability, presented no witnesses nor a defense to the claims asserted by DeMarco. None of the evidence presented at trial was contradicted in any respect other than by cross examination. One witness was not even subjected to cross examination. Within two hours of retiring for deliberation, the jury rendered a verdict on September 22, 2006 in favor of DeMarco and the clerk entered a civil judgment on the verdict in the amount of $2,801,937, including statutory interest accrued up to the verdict date.

Within days after the judgment entered, Virginia found itself on the brink of bankruptcy as news of the verdict was delivered to its bank, which threatened to freeze all existing credit lines and withdraw is approval to finance land acquisition in Quonset Point which was crucial to Virginia's plan to relocate its business operations. If Virginia could not provide the bank with proof that the verdict, as well as the pending claims of Woscyna and National Grid were satisfied, Virginia would have had no choice but to file for bankruptcy protection. Virginia

personally retained at it's own expense Corporate counsel, Steven DeLuca, Esq. of McAdams, Wick, DeLuca & Gemma ("corporate counsel") Corporate counsel was able to prevent the immediate closure of the business while also exerting the effort to negotiate a resolution of all the pending claims to avoid the possibility of bankruptcy. If the judgment and pending claims were not resolved by November 20, 2006, Virginia would have had no choice but to file for bankruptcy protection.

At some point after the verdict, DeMarco and Virginia became aware that Travelers had retained Anthony Zelle, Esq. ("Zelle") to represent it on the potential bad faith and extra-contractual claims. Appointed counsel filed a motion for a new trial and argued the same before the trial judge who rendered a bench decision on October 30, 2006 denying the motion. At Zelle's urging (Exhibits D & E), Virginia's counsel requested a stay of the entry of judgment on the verdict under the guise that Travelers wanted to schedule another mediation in an attempt to resolve the case. Travelers' extra contractual liability attorney was now directing appointed counsel on the strategy for proceeding post verdict. Virginia's private attorney in the DeMarco litigation, Jeffrey B. Pine, Esq. made an oral motion for a stay of the entry of judgment. Based on the representation that Virginia, through Travelers, wanted an opportunity to explore a post verdict settlement, the trial judge granted a thirty day stay of entry of judgment on the verdict. [2]

Eight days thereafter, Travelers and Zelle, through local counsel, surreptitiously filed the original Complaint in this Court naming Virginia and all other claimants as defendants. Neither Zelle nor local counsel notified the Defendants of the federal court filing and, on the contrary, Zelle continued to press for mediation with all parties. When DeMarco's counsel asked that

[2] DeMarco's counsel in the DeMarco Litigation matter is of the position that the stay of entry of judgment was not a permissible form of relief. Pursuant to Rule 58 of the Superior Court Rules of Civ. Proc., the clerk properly entered a Civil Judgment on Verdict on September 22, 2006, immediately after the jury returned its verdict. This is of particular importance because there exits a pending dispute between DeMarco's counsel and appointed counsel as to the proper way to document closure of the DeMarco Litigation.

Travelers agree to absorb the entire cost of the mediation, Zelle responded that he suggested mediation because he believed it to be a "means to advance the respective interests of all parties involved ...... Nevertheless, as a reflection of Travelers good faith and to keep the focus on the resolution of this matter, Travelers will cover the cost of the mediation." (Exhibit F).

Corporate counsel for Virginia and DeMarco's counsel immediately entered into negotiations to settle the judgment by accepting from Virginia an assignment of all of its rights against Travelers and others in exchange for a general release releasing only those claims against Virginia and specifically reserving any and all claims that existed against Travelers. At the same time, corporate counsel for Virginia impressed upon Travelers and Zelle the importance of bringing about a resolution of all claims prior to November 20, 2006 so that Virginia could avoid bankruptcy and continue its business. In connection therewith, corporate counsel made demand upon Travelers to immediately pay the sum of $500,000 from the policy limit to settle the Woscyna claim. This would have effectively eliminated any need for Virginia to file for bankruptcy protection because the Woscyna claim would have been settled and DeMarco was poised to release Virginia in exchange for the assignment.

Again, Travelers refused a direct request by its insured to make a payment in settlement of the Woscyna claim unless all claims were to be resolved simultaneously. In light of Travelers' continued refusal to entertain any settlement other than one involving all parties, Virginia was making the necessary arrangements to personally raise the $500,000 necessary to settle the Woscyna claim prior to the November 20, 2006 deadline to avoid filing for bankruptcy.

At Travelers suggestion, Virginia, DeMarco and Woscyna attended a mediation session on November 17, 2006. Prior to the mediation, Zelle met with Virginia and its corporate counsel. At this meeting Zelle did not disclose that he had already filed suit against Virginia and all other

parties to the mediation. At that meeting, Travelers' first order of business was to demand that Virginia use its own money to settle the National Grid claim. Travelers made it immediately clear that it's position had not changed and that under no circumstances would it pay any more than the policy limit to achieve a settlement of the claims.

At the mediation, Woscyna agreed to accept $450,000 in full and final settlement of his claims against Virginia and Travelers. DeMarco negotiated a resolution with Virginia and its corporate counsel that in exchange for an assignment of all of Virginia's rights against Travelers and others, DeMarco would execute a release in favor of Virginia so that Virginia could avoid having to file bankruptcy. Travelers was not part of the negotiations between Virginia and DeMarco nor was it ever released. Travelers, on it's own volition committed to make a gratuitous payment of the remaining policy limit of $550,000 to DeMarco without receiving any release for itself from DeMarco or from Virginia. Nevertheless, Travelers was fully aware that Virginia would be executing an assignment of its rights to DeMarco as part of the settlement agreement. Virginia negotiated a settlement with National Grid and immediately paid its own money to settle that claim on November 17, 2006. The threat of impending bankruptcy for Virginia was over.

Zelle immediately took copies of the releases that were circulated among the parties and used them, in conjunction with the mediation results, to assist local counsel in filing the Amended Complaint in this litigation with newly corrected facts. Defendants worked diligently over the next several days to draft a lawsuit against Travelers and appointed counsel alleging various causes of action including, legal malpractice against appointed counsel and breach of contract, bad faith, and claims for declaratory judgment asking the court to (i) order Travelers to pay the DeMarco verdict based on the *Asermely* doctrine (ii) order Travelers to pay prejudgment

interest over its policy limit pursuant to R.I Gen. Laws § 27-7-2 and (iii) to create new Rhode Island law by extending the *Asermely* doctrine to DeMarco individually as a third party claimant. (Exhibit G). Defendants' lawsuit was filed in Providence County Superior Court on the morning of November 22, 2006 and the named defendants in the case were served that same day. Later that same day, Defendants were notified for the first time that the Travelers litigation was pending in this Court. The Interpleader action filed by Travelers remains active in the Providence County Superior Court. In response to Travelers' Amended Complaint, Defendants have filed this Motion to Dismiss in favor of the parallel state court proceedings.

## *II. MOTION TO DISMISS OR STAY THE PROCEEDINGS AS AGAINST DEMARCO PURSUANT TO THE DECLARATORY JUDGMENT ACT AND RELATED STATE COURT LITIGATION*

It has been stated that one of the most litigated issues in the American system of federalism is the effect that a state court action has on a subsequent federal court case involving the same parties and similar issues. . *See Standard Fire Ins. Co. v. Gordon*, 376 F. Supp 2d 218, 220 (D.R.I. 2005), (*Citing Brayton v. Boston Safe Deposit & Trust Co.*, 937 F. Supp. 150, 151 (D.R.I. 1996)). As was the case in *Standard Fire*, the central issue to be decided here is the question of intersecting state and federal jurisdiction. The United States Supreme Court's decision in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, (1995) ("Wilton") provides the analytical framework for deciding whether this Court should dismiss or stay Travelers' declaratory judgment action in favor of DeMarco's parallel state court proceedings. Consistent therewith, DeMarco acknowledges that this Court possesses unique and substantial discretion in determining whether to declare the rights and obligations of the litigants herein. *Id.* The court's discretion, however, "is not unfettered." *Standard Fire*, 376 F. Supp. 2d 218. (Citing *Travelers*

*Ins. Co. v. La. Farm Bureau Fed'n. Inc.*, 996 F.2d 774, 778 (5th Cir. 1993)). The salient question for a district court presented with an action under the Declaratory Judgment Act is whether the questions in controversy between the parties to the federal suit can better be settled in the proceeding pending in the state court. See *Wilton*, 515 U.S. at 282.

Although the Supreme Court has not established an exclusive list of factors controlling the proper exercise of this discretion, it has noted that district courts should examine the scope of the parallel state court proceeding(s), the available state court defenses, and whether the state court proceeding(s) can effectively resolve the claims of all parties in interest. *Wilton, 515 U. S. at 283*. Where parallel state court proceedings seeking to resolve the same state law issues are already underway, the Court has held that such considerations support a district court's decision to stay or dismiss a declaratory judgment action. *Id.* at 290.

The factors espoused in *Wilton* provide the analytical framework for deciding the merits of DeMarco's motion in the instant matter. *See*, *Standard Fire*, 376 F. Supp. 2d at 225. These factors, however, should not be used as a simple "mechanical checklist," but rather applied in the context of a careful balancing test in light of the specific facts and the totality of circumstances present in the case at bar. *See Id.; see Petricca v. FDIC*, 349 F. Supp. 2d 64, 67 (D. Mass. 2004).

This Court in *Standard Fire* applied a five factor balancing test to determine whether to exercise it jurisdiction over the insurance company's declaratory judgment action. 376 F. Supp. 2d at 225. The five factor test includes:

> (1 ) whether the same parties are involved in both cases; (2) whether the claims made in the declaratory judgment action can be adjudicated in the state court action; (3) whether resolution of the declaratory judgment action turns on factual questions that will be litigated in the state court action; (4) whether the issues presented are governed by state or federal law; and (5) what effect the declaratory judgment action is likely to have on potential conflicts of interest between the insurer and the insured.

*Id.* at note 8 (*Citing Employers Mut. Cas. Co. v. PIC Contrs.*, 24 F. Supp. 2d 212, 215 (D.R.I.

1998); and *Aetna Cas. & Sur. Co. v. Kelly*, 889 F. Supp. 535, 539-40 (D.R.I. 1995)). This Court further noted in *Standard Fire* that the first three factors of this test are helpful in determining whether the federal and state court proceedings are indeed "parallel." *Id.*

## *III. APPLYING THE WILTON ANALYSIS*

A. Are the federal and state court proceedings parallel in nature?

DeMarco contends that the Plaintiff's declaratory judgment action is clearly parallel to both the bad faith action and the Interpleader action that are already underway in Providence County Superior Court. In determining the answer to the above question, this Court in *Standard Fire* concluded that in the post-*Wilton* era, a broad interpretation of the term "parallel" does not require that the separate actions must be identical. *Id.* Applying this broad definition to the facts of this case requires the conclusion that the proceedings are indeed parallel in nature.

1. Are the same parties involved in the separate actions and can all claims be adjudicated in the state court proceeding requiring resolution of common questions of fact?

In cases where related federal and state court proceedings involve the same parties, and where all claims asserted in the federal court declaratory judgment action are subject to proper adjudication in state court, a dismissal or stay of the federal court action may be appropriate. *See Wilton,* 515 U.S. at 283; *Aetna*, 889 F. Supp. at 540. In the instant matter, the parties named in Travelers' Amended Complaint are inextricably linked to the parties named in DeMarco's state court action and in the Interpleader action. The only palpable difference in the identity of the specific parties in these actions is that DeMarco should be named in this action individually and as an assignee of Virginia. The facts alleged in Travelers' Amended Complaint, although

necessarily skewed to its advantage, seek to represent Travelers' interpretation of the travel and history of the dealings between all of the parties from the date of the accident on September 10, 2003 through the mediation on November 17, 2006. Likewise, the Defendant's state court Complaint seeks to set forth their interpretation of the travel and history of the dealings between the parties from the date of the accident to the present day. Aside from an obvious difference in the parties' respective interpretation of what transpired between them, the only true difference is that the Defendants allege facts in the state court proceeding that give rise to a legal malpractice claim against appointed counsel.

Indeed, the prayers for relief in all three proceedings are in many respects identical. In the state court bad faith proceeding, Defendants seek judgment that Travelers breached its insurance contract with Virginia and acted in bad faith, while Travelers seeks a declaration from this Court that it "fully satisfied its contractual duties" to Virginia under the insurance contract. Defendants' state court action seeks a declaration that Travelers is obligated to pay the verdict above and beyond its policy limit pursuant to the Rhode Island Supreme Court's *Asermely* doctrine, while Travelers is asking this Court to declare that it was not required to pay any sums above and beyond its policy limit. Defendants bring many of the claims in the state court proceeding as an assignee of Virginia, while Travelers seeks a declaration that it not be obligated to indemnify or pay any claims based on the assignment. Aside from a simple matter of semantics, the relief Travelers specifically requests in paragraphs 46 (A-D) is substantially similar to the relief sought in the state court action.

Defendants' state court proceeding, however, seeks relief well beyond that which Travelers is seeking here based on the substantially similar factual allegations. Indeed, Defendants seek judgment against appointed counsel on a theory of legal malpractice, a

declaration that Travelers has a legal obligation to pay prejudgment interest on the verdict above its policy limit pursuant to R.I. Gen. Laws § 27-7-2.2, and a declaration that the Rhode Island Supreme Court's *Asermely* doctrine should be extended to allow a third party to assert an *Asermely* claim in the absence of an assignment of rights from the insured.

Travelers Interpleader action seeks verbatim relief as in this Court. Specifically, Travelers seeks in that litigation that "it be discharged from all liability to any of the Defendants in excess of $1,000,000.00." In this action Travelers seeks a declaration that "Travelers is not required to pay any sums to DeMarco, Woscyna, or National Grid in excess of the Policy's stated limit of $1,000,000.00".

The instant matter, therefore, is wholly distinguishable from issues in *Standard Fire*, where this Court concluded that the separate proceedings involved different factual issues and that the exercise of jurisdiction was clearly appropriate. In *Standard Fire*, the insurance company sought a declaratory judgment as to its obligations to its insured under the insurance contract. *See* 376 F. Supp. 2d at 229. The resolution of that issue turned on facts unrelated to the facts at issue in the underlying tort action. *Id.* As such, this Court concluded that the separate actions were not parallel and that the absence of parallelism weighed strongly against a dismissal of the declaratory judgment matter. *Id.* By contrast, the resolution of Travelers' prayers for relief here and in the Interpleader action and Defendants' claims in the state court matter both turn on inextricably linked questions of fact. Travelers cannot dispute this simple fact.

The answer to the query under analysis here is clearly in the affirmative. The same parties are involved in the separate federal and state court actions and all claims properly can be adjudicated in the state court proceeding requiring a resolution of common questions of fact. The inescapable truth here is that the three actions are indeed parallel.

2. The source of law to be decided weighs in favor of the state court proceeding.

The issues to be determined in this case do not involve a federal question but rather turn squarely on issues of state law. As noted above, these issues include: (i) whether Travelers breached its insurance contract with Virginia and acted in bad faith; (ii) whether Travelers is obligated to pay the judgment on the verdict above and beyond its policy limit pursuant to the Rhode Island Supreme Court's *Asermely* doctrine; (3) whether Travelers is obligated to indemnify or pay any claims based on the assignment to DeMarco; (3) whether appointed counsel committed legal malpractice in the defense of Virginia; (4) whether Travelers has a legal obligation to pay prejudgment interest on the verdict above its policy limit pursuant to R.I. Gen. Laws § 27-7-2.2; and (4) whether the Rhode Island Supreme Court's *Asermely* doctrine should be extended to allow a third party to assert an *Asermely* claim in the absence of an assignment of rights from the insured.

DeMarco acknowledges that the states interest, while important, could be diminished if the state-law issues are not "novel, unsettled, difficult, complex, or otherwise problematic." *See First Fin. Ins. Co. v. Crossroads Lounge, Inc.,* 140 F. Supp. 2d 686, 695 (S.D. W. Va. 2001). Nevertheless, abstention is also appropriate where difficult questions of state law bearing on policy issues of substantial public import, the importance of which transcends the result in the case then at bar. *Louisiana Power & Light Co.* v. *City of Thibodaux,* 360 U.S. 25 (1959).

In the instant matter, however, the issues to be decided are indeed novel, unsettled, complex or otherwise problematic. Moreover, some of the issues to be decided may indeed be issues of first impression on an important issue of public policy as it relates to the obligations of an insurance company not only to its insured, but to a third party claimant as well. Travelers' refusal to make an offer of settlement until the eve of trial and its position with respect to the

*Asermely* claims stems from its argument that it had no obligation to consider DeMarco's settlement demand within the policy limit because there were multiple claims arising from the loss and settlement of either claim would have left Virginia uninsured. Travelers also has advanced the multiple claimant argument to avoid liability for all prejudgment interest accruing on the judgment on the verdict. Both of these critical issues have not been addressed by the Rhode Island Supreme Court and represent important issues of first impression in Rhode Island jurisprudence and policy. Likewise, Defendants' request that the state court declare that the *Asermely* doctrine be extended to third parties in the absence of an assignment is also an issue of first impression. If this Court were to exercise jurisdiction over Travelers' declaratory judgment action it could well be "elbowing its way. . . to render what may be an 'uncertain and ephemeral' interpretation of state law." *Standard Fire,* 376 F. Supp. 2d at 231 (*Citing Mitcheson v. Harris,* 955 F.2d 235, 238 (4th Cir. 1992) (*Quoting Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, (1984)). The source of law to be decided in this case clearly weighs heavily in favor of the state court proceeding.

3. There exists no conflict of interest between Travelers and the other parties to the separate actions.

In an insurance context, as is the case here, an issue requiring further consideration is whether the Travelers is confronted with a conflict of interest that would affect its obligation to provide a defense of the insured in the underlying tort suit. Because the underlying tort action in the instant matter has been resolved and because Virginia has already assigned all of its rights to DeMarco, there is no possibility of a conflict of interest. Travelers' obligation to Virginia in this case is at an end and, as such, this element of the *Wilton* analysis runs in favor or a dismissal or stay of Travelers'

declaratory judgment action.

B. Other factors present in this case clearly weigh in favor of dismissal or a stay of Travelers' declaratory judgment action.

Ever cognizant of its broad discretion to exercise jurisdiction, this Court in *Standard Fire* considered several additional factors to determine whether a declaratory judgment action is subject to dismissal. 376 F. Supp.2d at 223. While this Court does not necessarily apply the "exceptional circumstances" test first enunciated in *Colo. River Water Conserv'n Dist. v. United States,* 424 U.S. 800 (1976), there nevertheless may exist some overlap in the factors espoused in *Colorado River* to be considered by this Court under a *Wilton* analysis. *Standard Fire,* 376 F. Supp. 2d at 224 n.7.

1. The order and manner in which jurisdiction was obtained by the concurrent forums in this case weighs clearly in favor of a dismissal or stay.

The decision in *Nortek Inc v. Molnar*, 36 F. Supp.63 (D.R.I. 1999) speaks quite clearly on the type of conduct that Travelers has engaged in here to be the first party to file a lawsuit. In *Nortek*, the plaintiff engaged in pre-suit conduct that mislead the defendant to believe that litigation was not imminent as he requested defendant's counsel to set forth in writing his opinion on the controlling New York authority. *Id.* at 66. Plaintiff's counsel stated that upon receipt of the letter he would discuss a possible settlement. *Id.* at 66-67. Instead, the plaintiff filed a declaratory judgment action in this Court. *Id.* at 67. In asking this Court to dismiss the plaintiff's declaratory judgment action, the defendant in *Nortek* alleged that the plaintiff had engaged in forum shopping and acted in bad faith. *Id* at 70.

In analyzing the defendant's motion to dismiss, The *Nortek* court first recognized that the

first lawsuit filed generally has priority in cases where there are two duplicate actions pending. *Id.* Nevertheless, there are special circumstances where this general rule does not apply. *Id.* While the court in *Nortek,* stopped short of sanctioning the plaintiff for the conduct leading up to the filing of the Rhode Island lawsuit, it nevertheless concluded that the plaintiff had "certainly shopped for a forum." *Id.* Further, the court concluded, in its broad discretion, that where the parties were still discussing a possible resolution, it would not reward conduct that undermines the "sound policy of promoting settlements and negotiations outside the courthouse." *Id. (Citing Davox Corp. v. Digital Systems Int'l, Inc.* 864 F. Supp. 144, 148).

Turning to the instant matter, Zelle on behalf of Travelers sought a stay of the entry of Judgment on October 30, 2006 in state court due to what he called the "dire financial consequences for Virginia Transport…to provide an opportunity for mediation". (Exhibit D). Yet five (5) business days later he filed suit against Virginia in this Court. There can be no conclusion other than Zelle, as counsel for Travelers manipulated the parties in the DeMarco litigation to forestall the entry of judgment to buy additional time to prepare and file the federal court Complaint. Indeed, until the settlement negotiations were addressed at mediation, Travelers' original Complaint alleged issues that were not yet ripe against parties that are now absent from the Amended Complaint. The only way those issues could have been ripe at the time of filing is if Zelle knew in advance that the mediation would not resolve the claims and that further litigation would ensue.

First, Zelle was the attorney who initiated the issue of requesting a stay of the entry of judgment in the DeMarco Litigation. (Exhibits "D" and "E") The court granted the motion over the objection of DeMarco's counsel. On October 30, 2006, Zelle forwarded a letter to DeMarco's counsel requesting that a mediation take place and a mediator be selected with the hope of

resolving the mediation. (Exhibit "E"). Six business days later, On November 7, 2006, Travelers filed the original Complaint in this Court seeking a declaratory judgment against all possible parties including it's own insured. There was no attempt at all to serve the original federal court complaint on any of the parties or otherwise notify them that the lawsuit was pending. Moreover, Travelers counsel failed to comply with LR Cv 9.1. That rule states:

> "Whenever a case pending in this Court involves a claim, occurrence, or event which is at issue in a proceeding pending before another tribunal, any party or counsel having knowledge of such other proceeding shall promptly file a "Notice of Related Proceedings".

They did not. Instead, Zelle continued to push forward with mediation suggesting that Travelers was acting in "good faith" to bring about a resolution to the various claims. (Exhibit "F"). The unsuccessful mediation took place on Friday, November 17, 2006. Zelle was present at the mediation and at no time did he disclose to the parties he supposedly was dealing with in "good faith" that they were actually defendants in Travelers' federal court case. On November 21, 2006, armed with new factual information gained from the mediation, Travelers filed the Amended Complaint. Defendants filed the parallel state court proceeding on November 22, 2006. The Interpleader action has been pending since August of 2006.

In retrospect, it is clear that Zelle did not attend the mediation with a good faith desire to resolve the case. He used the mediation only to exhaust Travelers' policy limit and to gather more factual information to buttress the already pending federal court litigation. What reasonable explanation can Zelle offer for this conduct?

Defendants contend that there is no reasonable or good faith explanation and that Zelle clearly engaged in forum shopping. The facts of this case represent conduct that is significantly more egregious than those before the *Nortek* court. This court can only conclude, therefore, that Zelle's effort to forestall the entry of judgment and to proceed with mediation was done in bad

faith and simply to secure a rush to the federal court house ahead of the Defendants' parallel state court proceeding. As such, this element of the analysis supports a dismissal or stay of Travelers' declaratory judgment action, as well as any sanctions that this Court may deem appropriate.

Plaintiffs,
By Their Attorneys:

***D'AMICO & BURCHFIELD, LLP***

/s/ Robert A. D'Amico II

/s/ Mark W. Dana

Robert A. D'Amico II, Esq. #4593
Mark W. Dana, Esq. #4150
536 Atwells Avenue
Providence, Rhode Island 02909
(401) 454-1212
(401) 454-1233 – fax

***CERTIFICATION***

I hereby certify that on this 14th day of December, 2006, a true copy of the within Memorandum was filed electronically, and is available for viewing and downloading from the ECF system, and copies were sent to all counsel of records via regular mail.

Anthony R. Zelle
ZELLE McDONOUGH, LLP
Four Longfellow Place, 35th Floor
Boston, MA 02114

Stephen P. Harten, Esq.
Ratcliffe Burke Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

/s/ Mark W. Dana, Esq.