A

D'AMICO & BURCHFIELD, LLP

ATTORNEYS AND COUNSELORS AT LAW

536 ATWELLS AVENUE
PROVIDENCE, RHODE ISLAND 02909
TELEPHONE (401) 454-1212
FACSIMILE (401) 454-1233

jbasso@dblawri.com

ROBERT A. D'AMICO, II*
JAMES V. BURCHFIELD, JR.

*ALSO ADMITTED IN MASSACHUSETTS

JESSICA L. BASSO
CHRISTOPHER B. MASELLI+
J. PATRICK O'NEILL
WILLIAM V. DEVINE, JR.
PATRICK F. DOWLING, JR.*

+ALSO ADMITTED IN CONNECTICUT

February 25, 2004

VIA CERTIFIED MAIL/
RETURN RECEIPT REQUESTED

Caren Gattinella CXG
Travelers Insurance Company
44 Bedford Street
Middleboro, MA 02344

| | | |
|---|---|---|
| RE: | Our Client: | Wayne Demarco |
| | Your Insured: | Virginia Transportation (Leo Doire) |
| | DOL: | 9/10/03 |
| | Claim No.: | AJN3624 |

Dear Caren:

Based on the foregoing, we believe that our client's claim for personal injuries far exceeds your insured's liability coverage policy limit. By this letter, we hereby demand settlement of our client's claim in the amount of your insured's policy limit. Failure to tender the policy limit in accordance with this demand may expose your company to liability for *damages and interest* in excess of the policy limit. The Rhode Island Supreme Court recently defined an insurance company's responsibility in this regard in *Asermely v Allstate Insurance Company(782 A.2d 461) (R.I.1999)* as follows:

> [The Rhode Island Supreme Court] has held that an insurance company has a fiduciary obligation to act in the "best interests" of its insured in order to protect the insured from excess liability***[and to] refrain from acts that demonstrate greater concern for the insurer's monetary interests than the financial risk attendant to the insured's situation. *Medical Malpractice Joint Underwriting Association of Rhode Island v Rhode Island Insurers' Insolvency Fund*, 703 A.2d 1097, 1102 (R.I. 1997). This fiduciary obligation extends not only to the insurance company's own insured, but also, as in this case, to a party to whom the insureds have assigned their rights.

> It is not sufficient that the insurance company act in good faith. An insurance company's fiduciary obligations include a duty to consider seriously a plaintiff's reasonable offer to settle within the policy limits. Accordingly, if it has been afforded reasonable notice and if a plaintiff has made a reasonable written offer to a defendant's insurer to settle within the policy limits, the insurer is obligated to seriously consider such an offer. If the insurer declines to settle the case within the policy limits, it does so at its peril in the event that a trial results in a judgment that exceeds the policy limits, including interest. If such a judgment is sustained on appeal or is un-appealed, the insurer is liable for the amount that exceeds the policy limits, unless it can show that the insured was unwilling to accept the offer of settlement. The insurer's duty is a fiduciary obligation to act in the best interests of the insured. Even if the insurer believes in good faith that it has legitimate defense against the third party, it must assume the risk of miscalculation if the ultimate judgment should exceed the policy limits.

Please contact me after you have had an opportunity to review your file to discuss settlement in accordance with this letter. I look forward to hearing from you.

Very truly yours,

D'AMICO & BURCHFIELD, LLP

Jessica L. Basso, Esquire

JLB/cpt

D'AMICO • BURCHFIELD, LLP
LEGAL SOLUTIONS IN A COMPLICATED WORLD

July 22, 2005

Michael R. DeLuca, Esq.
GIDLEY, SARLI & MARUSAK, LLP
One Turks Head Place, Suite 900
Providence, RI 02903

RE: Wayne DeMarco, et al. v. Leo Doire, et al.
C.A. NO.: PC 04-1171

Dear Attorney DeLuca:

Please consider this settlement demand on behalf of my clients, Wayne DeMarco and Leesa DeMarco and the minor Plaintiffs, Braedyn DeMarco and Chayce DeMarco.

As you know, on September 10, 2003, the Plaintiff, Wayne DeMarco suffered grievous personal injuries when the Defendant, Leo Doire, lost control over his vehicle and struck a utility pole. Specifically, Mr. DeMarco suffered a right grade 3B open tibia/fibula fracture with a tibial tubercle fracture, a right closed calcaneus fracture, right second third base of the metatarsal fractures, and a right foot compartment syndrome. He also suffered extensive degloving of the tibial skin, as well as damage to the bone and surrounding muscle.

During his initial hospitalization at Rhode Island Hospital, Mr. DeMarco first underwent an emergency reduction and IM nailing of his right femur, IM nailing of his right tibia and ORIF of his tibial tubercle on September 10, 2003. Mr. DeMarco also underwent foot fasciotomies and compartment syndrome examination and extensive debridement of the tibial wound. On September 11, 2003 and September 13, 2003, Mr. DeMarco underwent two additional irrigation and debridement surgical procedures. Then on September 15, 2003 and September 17, 2003, Mr. DeMarco underwent a washout of the tibial wounds and closure of the last foot fasciotomy and closed reduction/internal fixation of the calcaneous fracture. Finally, Mr. DeMarco endured two additional irrigation and debridement procedures and a microsurgical rectus abdominis free flap transfer before his discharge on October 9, 2003.

Following his October 9, 2003 discharge from Rhode Island Hospital, Mr. DeMarco received home nursing care and continued to treat with physicians at University Orthopedics and Northern Rhode Island Physical Therapy, on an outpatient basis. Mr. DeMarco also received treatment at the Rhode Island Hospital Plastics clinic due to his extensive scarring. Finally, Mr. DeMarco was admitted back into Rhode Island Hospital for additional surgery on January 13, 2004.

Mr. DeMarco treated at the Plastics Clinic through November 5, 2003. He treated at University Orthopedics through February 28, 2005. He received physical therapy through March 14, 2005.

In his report dated March 30, 2005, Dr. Mark Ritter of University Orthopedics opined that Mr. DeMarco had reached maximum medical improvement. Mr. DeMarco is left with edema, impaired knee and ankle motion, ankle pain, a shortened calcaneous, and a large skin flap and graft. Dr. Ritter further opined that Mr. DeMarco may need additional surgery in the future. The combination of his orthopedic injuries and scarring resulted in a 22% whole person impairment, consistent with the AMA Guides to Permanent Impairments.

Mr. DeMarco's medical expenses are as follows:

| | | |
|---|---|---|
| 1. Cranston Rescue | 9/10/03 | $598.00 |
| 2. RIH (er) | 9/10/03 | 6,948.00 |
| 3. RIH (inpatient) | 9/10/03 – 10/9/03 | 180,626.56 |
| 4. UEMF (bill only) | 9/10/03 | 519.00 |
| 5. RIMI (bills only) | 9/10/03 – 9/25/03 | 1,878.00 |
| 6. Dr. Scott Allen (University Ortho) | 9/10/03 – 10/24/04 | 33,851.82 * |
| 7. Assisted Daily Living | 10/10/03 – 11/7/03 | 1,115.00 |
| 8. RIH plastics clinic | 10/15/03 | 235.00 |
| 9. RIH plastics clinic | 10/24/03 | 128.00 |
| 10. RIH plastics clinic | 10/27/03 | 1,074.00 |
| 11. RIH plastics clinic | 11/5/03 | 128.00 |
| 12. RIH inpatient | 1/13/04-1/14/04 | 18,050.89 |
| 13. RIH Clinics | 1/26/04-10/25/04 | 5,991.00 |
| 14. Northern RI P.T. | 12/10/03 – 3/14/05 | 8,530.00 * |
| | | $259,673.00 |

*incomplete

At the time of loss, Mr. DeMarco owned and was employed by Dealer's Transport, Inc.. While the business, itself, was able to continue during Mr. DeMarco's rehabilitation, Mr. DeMarco, himself, was unable to work from the date of loss through June, 2004, for a total of 10 months. In not being able to work, Mr. DeMarco did not earn a paycheck. In 2002, Mr. DeMarco's earnings totaled $107,850.00, which amounts to $3183.00 per week. In 2003, his earnings totaled $49,300.00, with the difference of $57,700.00 attributable to the September 10, 2003 motor vehicle accident. Likewise, Mr. DeMarco's wages for 2004 totaled $46,300.00, again due to his inability to work for much of the year.

Broken down by week, Mr. DeMarco was unable to work from September 10, 2003 through December 31, 2003, for a total of 15 weeks. That period of lost wages totals $47,775.00. Mr. DeMarco was then out of work from January 1, 2004 through June 1, 2004, for a total of 20 weeks. That period of lost wages totals $63,600.00. Mr. DeMarco's total lost wage claim equals $111,435.00.

Wayne DeMarco's date of birth is 4/19/64. As of the date of Dr. Ritter's final report, Mr. DeMarco was 40 years old. His life expectancy at that point, was 38.4 years, which equals 1996.80 weeks. Mr. DeMarco is entitled to a figure for pain and suffering for each of those remaining weeks.

Finally, Mr. DeMarco's wife, Leesa, and their children, Braedyn and Chayce, have claims for loss of consortium and society.

In light of the foregoing, we hereby demand $1,000,000.00 (One Million Dollars and 00/100) in full and final settlement of these claims. Please advise at your earliest possible convenience.

Sincerely yours,

D'AMICO & BURCHFIELD, LLP

Jessica L. Basso, Esq.

JLB/ep

D'AMICO • BURCHFIELD, LLP
LEGAL SOLUTIONS IN A COMPLICATED WORLD

August 23, 2006

***VIA FACSIMILE and REGULAR MAIL***

Michael R. DeLuca, Esquire
One Turks Head Place
Suite 900
Providence RI 02903

***Re:*** ***Wayne DeMarco***
***Vs:*** ***Leo Doire***

Dear Mr. DeLuca:

I am in receipt of your July 31, 2006 letter regarding the above-entitled matter. I am also in receipt of your interpleader action, which you filed against my clients on behalf of Travelers Indemnity Company. In effect, you are asking the court to insulate the insurance company from any payments that exceed One Million Dollars. You are well aware as we approach trial on September 18th that the medical bills alone are roughly \$300,000. There is significant scarring and significant loss of use. My client has undergone four surgeries, including the removal of stomach muscle that was implanted into his leg. You were present at Dr. Trafton's deposition when he testified that there was a real concern as it relates to the possibility of amputation and that this was a life threatening injury. My client has a crushed heel, which is held together by two screws, a rod in his tibia, which was fractured in six different places, and a rod in his femur up to the hip. He has a full body impairment of 22% and Dr. Allen will testify as to the limited prognosis as Mr. DeMarco get's older. My understanding from you is liability is not at issue and interest is currently at 34%.

As I have stated before, there is a very real possibility of this case exceeding that limit. If the verdict does exceed that limit, we will do everything in our power to secure that judgment, including securing the judgment through the assets of Virginia Transportation. Having said that, it is our position that *Asermely* does apply. Regardless of whether your client, the insured, pays or your client, the insurance company, pays we are confident that we will secure a verdict that at least exceeds the limits by way of interest pursuant to RIGL 27-7-2.2.

536 Atwells Avenue · Providence, Rhode Island, 02909
Tel. 401.454.1212 · Fax. 401.454.1233 · www.DBLAWRI.com

It should be noted that you have made the representation that Travelers has offered the policy limits. It has not. Specifically, in response to one of our demand letters your adjuster stated on February 27, 2004 *"Travelers is not in a position to make an offer to Mr. DeMarco at this time"*. The only subsequent response was in July of 2006. At that time Travelers simply stated that it is putting its One Million Dollars on the table and that the three claimants should decide how it is divided.

In light of the above, and in light of the fact that the other claimants have not even filed suit, it would appear to be in your insured's best interest for you to reconsider your position as it relates to our past demands of February 2, 2004; February 25, 2004 and February 7, 2005. To that end, we, once again, consistent with *Asermely,* are demanding the One Million Dollars policy limit from Travelers Indemnity Company to fully resolve this matter as it relates to both your clients.

Due to the fact that trial is fast approaching and costs are mounting, **your client, Travelers, has until Wednesday, August 30, 2006 at 5:30 p.m. to respond to this letter.** If we do not hear from you we will consider our demand rejected and will continue to prepare for trial. Make no mistake, my clients are not willing to discuss settlement subsequent to that date and time.

I look forward to hearing from you.

Very truly yours,

Mark Dana
e-mail Address: mwd@dblawri.com

MD:aa

cc: Caren Gattinella
Director
Travelers Ins. Co.

Jeffery Pine, Esq.