**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY,<br>Plaintiff<br><br>v.<br><br>VIRGINIA TRANSPORTATION CORPORATION, LEO H. DOIRE, JR. and WAYNE DEMARCO,<br><br>Defendants | **Civil Action No.: 06-488S** |

***DEFENDANTS' RESPONSE MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY THE PROCEEDINGS***

**1. Travelers' reliance on the first filed rule as the deciding factor in this Court's decision to accept or abstain from exercising jurisdiction in this matter is entirely without merit.**

The vast majority of Travelers' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Memorandum") is dedicated to the false proposition that the "first-filed" rule ***requires*** that this Court deny the DeMarcos' Motion to Dismiss. Travelers first acknowledges that the DeMarcos' state court proceeding and Travelers' amended complaint in the instant matter are indeed parallel proceedings, and then goes on to conclude that a finding of parallelism is a necessary "predicate" to the "first filed"

rule. *See Travelers' Memorandum,* p.4, n.4. Travelers' reliance on the first filed rule as the linchpin in this Court's determination of whether to abstain from or exercise jurisdiction over the instant matter is, however, entirely misplaced.

It is difficult to reconcile how Travelers can take the position that *TransCanada Power Marketing, LTD. v. The Narragansett Electric Company*, 402 F. Supp. 2d 343 (D. Mass. 2005) ("*TransCanada*") and *Biogen, Inc.* v. *Shering AG*, 954 F. Supp. 391 (D. Mass. 1996) apply to the abstention analysis required in this case. It would appear that Travelers is attempting to rationalize, or otherwise distance itself, from its very questionable conduct and that of its counsel leading up to the filing of the amended complaint. Indeed, the first-filed rule is ***not*** a critical part of the analysis on an abstention issue, rather it is applied as the general rule when two competing litigations are pending in different federal courts in different jurisdictions to decide the choice of venue. *See TransCanada,* 402 F. Supp. at 347. Indeed, *TansCanada* specifically held:

> "The first filed rule, which generally gives precedence to the first of two duplicative actions proceeding in different ***federal courts.*** Where identical actions are proceeding concurrently in two Federal Courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a ***choice of venue*** decision."

*Id.* (Emphasis added). Likewise, the facts at issue in *Biogen,* required the court to determine whether a lawsuit first filed by one of the parties in the Federal District of Massachusetts would be given precedence over a later filed action by the opposing party in the Federal District of New Jersey. *See Biogen,* 954 F. Supp. 391. The *Biogen* court applied the first-filed rule to determine that the District of Massachusetts was the appropriate ***federal venue*** for the litigation to proceed. *Id.* at 399. (Emphasis added).

In *Maritz v. Starek*, 2006 U.S. Dist. Lexis 36922 (E.D. Mo. 2006), a case that is far more analogous to the case at bar, the United States District Court for the Eastern District of Missouri considered the Defendants' motion to dismiss the federal court declaratory judgment action under the abstention doctrine in favor of a parallel state court proceeding. *Id.* The Plaintiffs in *Maritz* argued against the federal court's abstention, relying heavily on the first-filed rule. *Id.* at n.3. The court, however, specifically concluded that heavy reliance on the first filed rule was "unfounded." *Id.* "The first-filed rule applies ***only*** when both cases are in federal court." *Id.* (Emphasis added).

Additionally, in cases where there are multiple actions involving nearly identical issues and parties, the first-filed rule "gives way in the context of a coercive action filed subsequent to a declaratory action." *AmSouth Bank v. Dale,* 386 F.3d 763, 791 n.8 (6th Cir. 2004). Federal courts generally take a dim view of plaintiffs in declaratory judgment actions who file their lawsuits days or weeks before a coercive lawsuit filed by a "natural plaintiff" where it seems they have done so simply for the purpose of acquiring a favorable forum. *Id.* at 788. Allowing declaratory judgment actions in these situations can deter settlement negotiations and encourage races to the courthouse. *Id.*

When exercising their discretion whether to entertain a declaratory judgment action, federal courts have on occasion stated that declaratory actions founded exclusively on state law issues should be dismissed "as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to choose the forum and time of suit." B*ASF Corp. v. Symington,* 50 F.3d 555, 588 (8th Cir. 1995). Where a putative defendant files a declaratory judgment action with the sole purpose of defeating liability in a

subsequent coercive suit, "no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum -- a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *AmSouth Bank*, 386 F.3d at 788 (collecting cases).

Contrary to the position that Travelers has taken, the first-filed rule is at best only a relevant factor in an abstention analysis where parallel case are pending in both state court and federal court and, therefore, is far less apt to be determinative. *Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002). Travelers cannot overcome that fact that its heavy reliance on the first filed rule as the primary basis for denying the DeMarcos' motion to dismiss is entirely misplaced and must fail. Moreover, Travelers' conduct leading up to the filing of its two complaints in the instant matter is clearly indicative of tactical maneuvering calculated to deny the DeMarcos their traditional right to select a forum.

Even if Travelers were able to persuade this Court that its conduct in this case was "prudent" as opposed to surreptitious, the fact that Travelers' amended complaint[1] was filed one day prior to the DeMarcos' state court action is of little or no significance in determining whether this Court should abstain from exercising jurisdiction in this case.

**2. The questions in controversy in the parallel proceedings involve important issues of substantive state law and public policy that can be better settled in the state court action.**

It is undisputed that there is no issue of federal law involved in this case. The

[1] The DeMarcos contend that even if the first-filed rule applied, Travelers' filing of the original complaint should not be considered as the operative filing date. It is the amended complaint that identifies the parties to this litigation and alleges the causes of action that are now in dispute before this Court, and, therefore, the filing date of the amended complaint should be used in applying the first-filed rule.

United States Supreme Court has specifically recognized that:

> ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart v. Excess Insurance Co.*, 316 U.S. 491; *Fuller Co. v. Ramon I. Gil Inc.*, 782 F.2d 306, 310 (1st Cir. 1986)(*Quoting Brillhart).* Consideration of this factor clearly weighs in favor of this Court granting the DeMarcos' Motion to Dismiss in favor of the state court proceeding.

Nevertheless, Travelers contends that there is no compelling issue of state law presented in this case that so as to require this Court to abstain from exercising its jurisdiction over Travelers' declaratory judgment action. Travelers further argues that the DeMarcos have failed to cogently explain why the issues of applicable substantive law are indeed novel, unsettled and otherwise problematic. Travelers again points to the general release[2] executed by the DeMarcos to support its position that the DeMarcos have no claim against Travelers and that the simple issues of substantive law could easily be applied by this Court to decide Travelers' declaratory judgment action. Travelers' cites no case law to support its position in this regard[3] and, further, this argument ignores the

[2] The general release executed by the DeMarcos was only one part of a carefully negotiated and detailed settlement agreement with Leo H. Doire and Virginia Transportation Corp. (collectively "Virginia") following the jury verdict in the tort action between them. The settlement agreement provided that the DeMarcos receive an assignment of all of their rights against Travelers and others for bad faith, legal malpractice and any Asermely claims in exchange for the general release, which itself specifically reserves any and all claims against Travelers.

[3] Travelers filed a Motion to Dismiss the DeMarco's complaint in the removed matter now pending in this Court under *Wayne DeMarco v. Travelers Ins. Co.,* No. 1:06-cv-539, and advanced this very same argument. In its supporting memorandum, Travelers cited the minority view as it relates to its position on this issue and did not discuss the applicabliblity of the majority view discussed by the DeMarcos herein. It is interesting that Travelers seems to have abandoned its previously cited legal authority to support its position that the general release executed by the DeMarcos extinguishes all claims in this case.

majority view throughout the United States on the very issues in dispute between the parties. Further, Travelers' argument that the *Asermely*[4] doctrine does not come into play in this case is likewise without merit.

Although the issues of substantive law presented in this case have not yet been decided by the Rhode Island Supreme Court, there nevertheless exists a plethora of authority from other jurisdictions that acknowledges and approves the exact type of settlement agreement that the DeMarcos and Virginia entered into in the instant matter. In *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F. 2d 1128, 1131 (1989), the United States Court of Appeals for the District of Columbia recognized the so called "judgment rule" as the majority view throughout the United States. The judgment rule provides that "an entry of judgment in excess [of policy limits] alone is sufficient damage to sustain a recovery from an insurer for its breach of duty". *Id. (Citing Carter v. Pioneer Mut. Casualty Co.,* 423 N.E.2d 188, 190 (Ohio 1981)).

In *Gray*, the plaintiff secured a default judgment against a defendant in a personal injury action. *Id.* at 1129. Shortly thereafter, the defendant assigned his claims against the insurance company to Gray in exchange for a release that relieved the defendant of any obligation to pay the judgment. *Id.* The insurance company in *Gray* advanced an argument similar to that of Travelers here, that the release also operated to terminate the assignee's rights to pursue a claim against it. *Id.* at 1133. The *Gray* court, however, specifically rejected this argument and concluded that there was no valid reason not to give the assignment and release "full effect to its terms." *Id.* The *Gray* court went to state:

---

[4] *Asermely v. Allstate Ins. Co.*, 728 A.2d 461 (R.I. 1999).

> After all, if the release ….. extinguished the claim …… against the insurance company simultaneously with the assignment of the claim, that would also be true of that part of the claim [the assignor] had against the insurance company within the policy limits…… Appellant's argument reduces to an absurd conclusion: if the insured were to have paid the judgment in full and obtained a release from the injured party, he would have no right to proceed against the insurer for indemnification. *Id.*

Relying primarily on the *Gray* decision, The Massachusetts Supreme Judicial Court also adopted the judgment rule and recognized it as the majority view in *Campione v. Wilson*, 661 N.E.2d 658 (Mass. 1996). In *Campione*, the parties stipulated to a judgment and thereafter entered into a settlement agreement providing for an assignment and releases. *Id.* at 660. The court was asked on appeal to dismiss the assigned claims based on the release. *Id.* After analyzing the case law from different jurisdictions, The *Campione* court noted that although there may exist a split in authority across the country,

> the majority rule, however, is that …entry of judgment in excess of the policy limits coupled with a release… in favor of the insured ***does not*** invalidate an accompanying assignment of the right to sue the insurer.

*Id.* at 662. (Emphasis added). The *Campione* court further concluded that it was reluctant to foreclose the possibility of settlement like the one entered into in the underlying action. *Id.* There is a strong public policy to promote settlements where the assignor receives the benefit of being free from personal liability for amounts beyond its insurance policy limits in exchange for cooperation in assisting the assignee in their efforts to assert the assigned claims against the insurance company. *Id. at 663*. The court concluded that it was entirely appropriate to give full effect to the agreements:

> which have led to a carefully negotiated and detailed settlement, in which the plaintiffs have voluntarily assumed the burden of proving any claims that [the assignor] might have against the [insurance carrier], in a situation

> where [the assignor's] liability for the accident is reasonably clear, the primary insurer has paid the full limits of its policy, and damages are substantial.

*Id.*

While the Rhode Island Supreme Court ***has not*** yet considered the applicability of the judgment rule espoused by both *Gray* and *Campione*, it did go so far as to judicially promulgate a new rule to guide the trial courts in dealing with cases where there is a judgment in excess of a defendant's policy limit. *Asermely,* 728 A.2d 461. Like the instant matter, the Plaintiff in *Asermely* had obtained a judgment against the Allstate insured in excess of the policy limit. *Id.* at 462. The Allstate insureds assigned all of their rights to the *Asermely* plaintiff, who pursued the assigned claims directly against Allstate. *Id.* at 463. Although the court found that there was no bad faith on the part of Allstate, it took the opportunity to promulgate a new rule to guide the Rhode Island trial courts as follows:

> It is not sufficient that the insurance company act in good faith. An insurance company's fiduciary obligations include a duty to consider seriously a plaintiff's reasonable offer to settle within the policy limits. Accordingly, if it has been afforded reasonable notice and if a plaintiff has made a reasonable written offer to a defendant's insurer to settle within the policy limits, the insurer is obligated to seriously consider such an offer. If the insurer declines to settle the case within the policy limits, it does so at its peril in the event that a trial results in a judgment that exceeds the policy limits, including interest. If such a judgment is sustained on appeal or is unappealed, the insurer is liable for the amount that exceeds the policy limits, unless it can show that the insured was unwilling to accept the offer of settlement. The insurer's duty is a fiduciary obligation to act in the best interests of the insured. Even if the insurer believes in good faith that it has a legitimate defense against the third party, it must assume the risk of miscalculation if the ultimate judgment should exceed the policy limits.

*Id.* at 464. This fiduciary obligation extends not only to the insurance company's own

insured, but also, as in this case***, to a party to whom the insureds have assigned their rights***. *Id.* (Emphasis added).

While *Asermely* is silent on whether there existed a general as well as an assignment, there can be no mistake as to the strong public policy behind the Rhode Island Supreme Court's decision to, *sua sponte*, promulgate a new landmark rule in this state. The strong public policy concerns at issue in *Gray* and *Campione* are identical to those at issue here as well as those espoused by the Rhode Island Supreme Court in *Asermely.*

Even if this Court were to conclude that this aspect of the law in Rhode Island is "well settled", Travelers has made it quite clear that it does not believe that the *Asermely* doctrine applies in this case because of both the execution of the release and because there were "multiple claimants"[5] arising out of the motor vehicle accident. The fact that Travelers is seeking to carve out an exception to a judicially promulgated rule, in an of itself, creates an issue of first impression that can be best settled in the parallel state court litigation and represents a state law issue of first impression and paramount importance given the strong public policy at issue under *Asermely.*

In *The Standard Fire Ins. Co. v. Gordon*, 376 F.Supp. 218, 233, this Court acknowledged that policy considerations are also important in deciding whether a federal declaratory judgment action should be dismissed or stayed in favor of a parallel state court proceeding. Where, as here, there exists issues of first impression involving important Rhode Island public policy, this Court must grant the DeMarcos' motion to

[5] Although the "multiple claimants" argument is not specifically discussed in Travelers' memorandum, the existence of multiple claimants in the underlying tort actions was one of the primary reasons advanced during the years before the DeMarco judgment as to why Travelers could not make a settlement offer and served as the basis for its position that *Asermely* did not apply to the facts of this case.

dismiss because the state courts are the more appropriate forum to settle the dispute.

**3. This Court should abstain from exercising jurisdiction over the instant matter to avoid piecemeal litigation of the identical claims pending in state court.**

In cases where parallel proceedings are pending and require the resolution of factual questions to be litigated in the state court proceeding, there exists a risk of piecemeal litigation which would result in a duplication of efforts as well as the possibility of the different tribunals reaching different results. *See Travelers Indem. Co. v. Madonna,* 914 F.2d 1364, 1369 (9th Cir. 1990). The possibility of piecemeal litigation is a factor that can support a district court's decision to grant a stay of the federal court declaratory judgment action. *Id.* The Court of Appeals for the First Circuit has concluded that "great weight" should be attached to the "desirability of avoiding piecemeal litigation" factor. *Fuller Co.*, 782 F.2d at 309.

The parties and a many of the issues in dispute in the parallel proceedings are virtually identical. It cannot, therefore, be disputed that there would be a substantial risk of piecemeal litigation resulting in the possibility of inconsistent results if Travelers' litigation was allowed to proceed in this Court. As such, this factor also weighs in favor of this Court granting the DeMarcos' Motion to Dismiss.

Plaintiffs,
By Their Attorneys:

***D'AMICO & BURCHFIELD, LLP***

__/s/ Robert A. D'Amico II_________

/s/ Mark W. Dana_______________

Robert A. D'Amico II, Esq. #4593
Mark W. Dana, Esq. #4150
536 Atwells Avenue
Providence, Rhode Island 02909
(401) 454-1212
(401) 454-1233 – fax

## ***CERTIFICATION***

I hereby certify that on this 14th day of January, 2007, a true copy of the within Memorandum was filed electronically, and is available for viewing and downloading from the ECF system, and copies were sent to all counsel of records via regular mail.

Anthony R. Zelle
ZELLE McDONOUGH, LLP
Four Longfellow Place, 35th Floor
Boston, MA 02114

Stephen P. Harten, Esq.
Ratcliffe Burke Harten & Elias, LLP
1600 Financial Plaza
Providence, RI 02903

/s/ Mark W. Dana, Esq,